ELMORE, Judge.
 

 Jack Albert Hawkins (the deceased) was an elderly man, suffering from the effects of Alzheimer's disease and dementia. On 23 June 2004, when the deceased was eighty-three years old, he entered into a purported marriage with his fifty-five-year-old live-in caretaker, Curley Mae Wiseman (defendant). A court declared the deceased incompetent on 1 December 2004
 
 [1]
 
 and the Clerk appointed Bryan C. Thompson as his guardian on 7 December 2004. The decedent passed away on 10 January 2007.
 

 On 3 May 2005, the guardian instituted an action requesting the annulment of the purported marriage on behalf of the deceased. Defendant filed her answer on 10 June 2005.
 

 The deceased's estate (plaintiff)
 
 [2]
 
 served a first set of interrogatories and request for
 
 *694
 
 production on 7 February 2006. However, defendant issued no response, despite receiving an extension of time with plaintiff's consent. On 4 April 2006, eight days before the extended due date, defendant's attorney moved and was allowed to withdraw as counsel.
 

 On 18 April 2006, plaintiff filed a motion to compel discovery, which the court scheduled for hearing on 15 May 2006. On that date, however, the court granted defendant a two-week continuance to allow her to secure new counsel. The court held the hearing on 5 June 2006, and ordered defendant to serve complete discovery answers by 5 July 2006. Defendant did not do so.
 

 On 20 July 2006, defendant's attorney moved to withdraw based on defendant's failure to pay his firm, and the court allowed the withdrawal on 11 September 2006.
 

 On 8 December 2006, plaintiff moved the trial court for sanctions against defendant for her refusal to comply with discovery. After receiving notice of the hearing, defendant executed "incomplete, evasive and [noncompliant]" answers to plaintiff's interrogatories and requests for production. Likewise, defendant's 5 February 2007 supplements to her answers, delivered on the day of the sanction hearing, were also incomplete.
 

 On 9 February 2007, the trial court granted plaintiff's request for sanctions, striking defendant's answer and entering judgment by default against her. Accordingly, after making extensive findings, the trial court decreed that the purported marriage was annulled.
 

 In a motion entered 6 March 2007, defendant moved for Rule 60 relief from the 9 February 2007 order. The trial court denied defendant's motion in an order entered 20 June 2007. It is from this order that defendant now appeals.
 

 Defendant's first argument on appeal is that her Rule 60 motion should have been granted on the grounds that the annulment order was void. Preliminarily, we note that defendant did not argue that the trial court erred by imposing sanctions under N.C. Gen. Stat. § 1A-1, Rule 37(b)(2) for her failure to respond to discovery requests. Defendant's sole argument is that the trial court could not enter a judgment of annulment by default, thus rendering the judgment void
 
 ab initio.
 
 Because defendant did not appeal from the underlying judgment which grants annulment, but only from the order which denied her Rule 60 motion for relief from that order, defendant's entire argument in this appeal rests upon her assertion that the annulment judgment is void.
 

 In support of this argument, defendant claims that the trial court lacked the authority to enter a judgment of annulment by default under N.C. Gen.Stat. § 50-10 (2005). That statute states, in pertinent part:
 

 [T]he material facts in every complaint asking for a divorce or for an annulment
 
 shall be deemed to be denied by the defendant,
 
 whether the same shall be actually denied by pleading or not, and no judgment shall be given in favor of the plaintiff in any such complaint
 
 until such facts have been found by a judge or jury.
 

 N.C. Gen.Stat. § 50-10(a) (2005) (emphases added).
 
 See also Allred v. Tucci,
 

 85 N.C.App. 138
 
 , 142,
 
 354 S.E.2d 291
 
 , 294 (1987) (("In North Carolina, jurisdiction over the subject matter of actions affecting the marriage relationship is authorized only by statute. Included within that grant of authority are the provisions of G.S. 50-10....") (citations omitted). A marriage may not be annulled by a default judgment.
 
 Adair v. Adair,
 

 62 N.C.App. 493
 
 , 498-99,
 
 303 S.E.2d 190
 
 , 194 (1983) (("In North Carolina a plaintiff cannot obtain judgment by default in a divorce proceeding. A divorce will be granted only after the facts establishing a statutory ground for divorce have been pleaded and actually proved.") (citing N.C. Gen.Stat. § 50-10) (additional citations omitted));
 
 see
 
 N.C. Gen.Stat. § 50-10(a) (2005);
 
 see generally
 
 Black's Law Dictionary 449 (8th ed.2004) (defining a default judgment as "a penalty against a party who does not comply with an order, esp. an order to comply with a discovery request")). Although most of the cases which have arisen under this statute have dealt with an absolute divorce instead of annulment, the plain language of the statute
 
 *695
 
 says that its prohibition against default applies to
 
 every complaint
 
 asking for a divorce or
 
 for an annulment.
 
 N.C. Gen.Stat. § 50-10(a) (2005). Defendant is correct that a judgment for annulment cannot be entered by default.
 

 Further, we note that the facts found by the trial court from the testimony and affidavits refer to the failure of defendant to comply with the court's discovery orders and support only the trial court's decision to impose sanctions pursuant to Rule 37. Those facts were not material to whether or not plaintiff was entitled to an annulment. The only facts which would be material to the annulment were facts which would tend to prove that the deceased was legally incompetent to marry on 23 June 2004, at the precise time of the wedding of defendant and the deceased. N.C. Gen.Stat. § 51-3 (2005);
 
 Geitner v. Townsend,
 

 67 N.C.App. 159
 
 , 162,
 
 312 S.E.2d 236
 
 , 238 (1984);
 
 see also Allred,
 

 85 N.C.App. at 142-43
 
 ,
 
 354 S.E.2d at 295
 
 ("[M]aterial facts [within the meaning of N.C. Gen.Stat. § 50-10(a)] include not only the jurisdictional facts required by G.S. 50-8 to be set forth in the complaint, but also facts constituting the grounds for the claim for relief.").
 

 The trial court expressly deemed admitted the material facts as alleged by the complaint, and the record does not indicate that the trial court heard testimony or weighed evidence in order to find any facts relevant to the legal incompetence of the deceased at the time of his wedding to plaintiff. Specifically, the "Findings of Fact" in the order granting annulment state:
 

 28. The court determines in its discretion that the appropriate sanctions to be applied for the defendant's willful and intentional
 
 failure to comply
 
 with the Order previously entered in this matter is that an Order should be entered striking out the defendant's answer and
 
 rendering judgment by default
 
 against the defendant.
 

 * * *
 

 30. By entering a default in this matter,
 
 defendant has admitted the allegations contained in the complaint,
 
 including but not limited to, the following:
 

 8. At the time the parties were married, the
 
 plaintiff
 
 was suffering the effects of Alzheimer's disease and dementia and
 
 was not competent to enter into a contract of marriage.
 
 He was often unaware of his surroundings and was not able to identify or remember close family members.
 

 * * *
 

 11. Upon information and belief, the defendant took advantage of the plaintiff, lying in wait until the plaintiff's first wife died, in order to take him to the Register of Deeds office and the magistrate to marry him in hopes of inheriting from him upon his death.
 

 12. The plaintiff is entitled to have his marriage to the defendant annulled.
 

 31.
 
 As a result of the defendant's admissions to the allegations contained in the complaint, the plaintiff is entitled to the relief requested
 
 in the complaint to wit: plaintiff be granted an annulment and that the marriage between the parties be declared null and void
 
 ab initio.
 

 (Emphases added).
 

 The order indicates that the trial court did hear testimony from witnesses, but because there is no transcript in the record on appeal, we are unable to determine if any of the testimony addressed the facts supporting the annulment. Even if there were such testimony, the trial court expressly based all of its findings relevant to the annulment upon the allegations of the complaint, which the trial court deemed admitted based upon striking defendant's answer, ignoring the fact that N.C. Gen.Stat. § 50-10(a) requires that the allegations of the complaint are "deemed to be denied" even in the absence of an answer.
 

 The trial court is empowered in its discretion to render a judgment of default for failure to comply with an order made pursuant to Rule 37 so long as that judgment is just. N.C. Gen.Stat. § 1A-1, Rule 37(b)(2) (2005). However, the general rules of discovery found in Rule 37 of the North Carolina
 
 *696
 
 Rules of Civil Procedure do not trump the very specific rule concerning annulment and divorce found in N.C. Gen.Stat. § 50-10(a), which gives the court subject matter jurisdiction over the annulment action. The trial court did not find from the evidence any material facts regarding the annulment claim upon which it could grant the relief sought by plaintiff.
 

 Unfortunately, the trial court entered a sanction under N.C. Gen.Stat. § 1A-1, Rule 37(b)(2), that was unavailable in this particular case. Pursuant to N.C. Gen.Stat. § 1A-1, Rule 37(b)(2)(b), the trial court could have entered "[a]n order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence...." N.C. Gen.Stat. § 1A-1, Rule 37(b)(2)(b) (2005). After entering an order under Rule 37(b)(2)(b), the trial court could have then heard the evidence from plaintiff and defendant as appropriate under the terms of its sanction order and made findings of fact in accordance with N.C. Gen.Stat. § 50-10(a). We therefore reverse and remand the case to the trial court for consideration of an appropriate sanction under Rule 37(b)(2) and for further proceedings consistent with this opinion.
 

 Reversed and remanded.
 

 Judges HUNTER and STROUD concur.
 

 That same day, defendant, who was present at the incompetency hearing and aware of the court's decision, took the deceased to the bank and attempted to withdraw more than $500,000.00.
 

 On 12 January 2007, the estate moved to be substituted for the deceased in the action, which motion the court granted with defendant's consent. For the purposes of this opinion, this Court will refer to the estate as plaintiff throughout its discussion, regardless of whether the events described took place before or after plaintiff's motion.